IN THE CIRCUIT COURT OF JEFFERSON COUNTY
STATE OF MISSOURI

**FILED**

OCT 08 2024

MICHAEL E. REUTER
CIRCUIT CLERK

CHRISTOPHER PROSSER, Individually, )
And on behalf of other similarly situated, )
                                      )
           Plaintiffs, )
                                      )
Vs )
                                      )
Better Mortgage Corporation )
                                      )
Serve Registered Agent: )
CT Corporation )
120 S. Central Ave. )
St. Louis, Mo. 63105, )
                                      )
           Defendant. )

No. 24JE-cc 00934

COMPLAINT CLASS ACTION

JURY TRIAL DEMANDED

---

## COMPLAINT CLASS ACTION

---

        Plaintiff, Christopher Prosser, appearing both individually and on behalf of all others

similarly situated, brings this class action against Better Mortgage Corporation ("Better" or

"Defendant") based upon personal knowledge as to his own acts and experiences and, as to all

other matters, based upon information and belief, and states, alleges, and avers as follows:

### I. Nature of the Action

        1.      This is a class action under the Missouri No Call List and Telemarketing

prohibitions set forth in §407.1098.1 and Mo. Rev. Stat. § 407.1076.

        2.      This is also a class action under the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227(c)(5), and 47 U.S.C. § 227(b)(1)(A), and a federal statute enacted in

response to widespread public outrage about the proliferation of intrusive, nuisance

telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

1

3.      Defendant Better Mortgage Corporation offers a service where they solicit individuals to secure the financial services and mortgage services it offers.

4.      Defendant Better uses robocalling, artificial intelligence automated systems, computer aided blast texts, area code spoofing technology and technology to block or otherwise circumvent a consumer's use of a caller identification service, to make outbound telemarketing calls to thousands, if not millions of consumers across U.S., to harass and annoy individuals to market their financial services.

5.      By doing so, Defendant Better violated the Missouri No Call List and Telemarketing prohibitions set forth in §407.1076(3)(11), §407.1098.1 RSMo., and violated  47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A) of the Telephone Consumers Protection Act ("TCPA") when it contacted numbers on the Missouri and National Do Not Call Registries without their express written consent.

6.      Defendant has caused Plaintiff and Class Members to suffer concrete injuries because of placing unwanted robotic, Automatic Telephone Dialing Systems ("ATDS"), artificial intelligence generated, mass blast computer generated texts, and direct dialed telephonic calls to their private residential telephones.

7.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful telemarketing calls. Plaintiff additionally seeks damages as authorized by the MDNC and TCPA on behalf of Plaintiff and the Class Members, and any other available legal or equitable remedies resulting from the actions of Defendant described herein.

8.      Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other people who received similar calls.

9.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Missouri Supreme Court Rule 52.08 and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

## II.    Parties

10.     Plaintiff Christopher Prosser (hereinafter referred to as "Plaintiff" or "Mr. Prosser") is an individual and Missouri resident residing in this District.

11.     Defendant Better Mortgage Corporation (hereinafter "Better") is a financial services company that solicits customers all over the country to purchase their mortgage services.

12.     Defendant Better  is a New York corporation, a Missouri foreign corporation, and can be served process c/o CT Corporation, 120 S. Central Ave., Clayton, Mo. 63105, and is a company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District, to persons on the Federal and Missouri do not call registries, just as it did with the Plaintiff.

### Jurisdiction and Venue

13.     This Court has jurisdiction for violations of the Missouri do not call registries under Chapter 407.010 et seq. *RSMo.*  As stated in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A) of the TCPA.

14.     This Court has personal jurisdiction over Defendant Better because they either reside in this District and/or made the calls into this District, and/or they promulgated the policies and procedures and/or had the right to do so for Defendant Better which encourages, entices, condones, and ratifies illegal telemarketing calls into this District to persons on the no

3

call lists. Moreover, Defendant Better has sufficient minimum contacts with the State of Missouri

and this District in that they transact business in Missouri, are registered as a foreign corporation

with the Missouri Secretary of State, it profits personally from Defendant Better's sales made in

Missouri, they send their products to Missouri and advertise in Missouri, and the extraterritorial

tortious acts complained of within this complaint occurred in Missouri and to a Missouri

resident, thereby subjecting them to Missouri's long arm statute, Section 506.500.1. See *Human*

*v. Frubbel, et al.*, 2024 WL 2048865 (E.D. Mo. May 8, 2024); *Prosser v. USHealth Advisors,*

*LLC*, 2023 WL 5093872 (E.D. Mo. August 9, 2023); *UMB Bank, N.A. v. Kraft CPAs, PLLC*,

2023 WL 3666879 (U.S. Dist. Ct, W.D. Mo. May 25, 2023); *Hand v. Beach KC, LCC*, 425

F.Supp.1096 (W.D. Mo. 2019).

15.    Venue is proper because the calls at issue were made into this District and/or from

this District.

**THE MISSOURI NO-CALL LAWS**

16.    The Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1 provides:

> No person or entity shall make or cause to be made any telephone
> solicitation to the telephone line of any residential subscriber in this state
> who has given notice to the attorney general, in accordance with rules
> promulgated pursuant to section 407.1101 of the subscriber's objection to
> receiving telephone solicitations.

17.    A "residential subscriber" is defined as, "a person who has subscribed to

residential telephone service from a local exchange company or the other persons living or

residing with such person." Mo. Rev. Stat. § 407.1095(2).

18.    Defendant's calls to a telephone subscriber on the Missouri Do Not Call List is an

unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and

expense without any consideration in return.

19.    Defendant's practice effectively forced Plaintiff to listen to and or read Defendant's unlawful, harassing, frustrating, and annoying sales campaign.

20.    Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial concrete injury to hundreds of thousands of persons.

21.    Defendant's actions prevented the Plaintiff's telephone from being used for other legitimate purposes during the time Defendant were illegally occupying the Plaintiff's telephone for Defendant's unlawful purpose.

22.    Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)    Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing.

(4)    Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls . . .

(10)    Knowingly provide assistance or support to any telemarketer when that person knows or consciously avoids knowing that the telemarketer is engaged in any act in violation of sections 407.1070 to 407.1085; or

(11)    Knowingly utilize any method to block or otherwise circumvent a consumer's use of a caller identification service.

23.    Chapter 407.1107(2) provides for up to $5,000 in damages for each knowingly violation.

## TCPA Background

5

24.     In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991)(codified at 47 U.S.C. § 227(c)(5) and § 227(b)(1)(A)).

25.     The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone calls at those numbers. *See* 47 U.S.C §227 et seq.

26.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

27.     The TCPA and implementing regulations prohibit the initiation of telephone calls to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227. (b)(1)(A) Damages under this code are up to $1,500 per call or text.

**III.    Factual Allegations**

28.     Defendant Better and their agents, employees and/or vendors, advertise and sell mortgage services which target senior citizens and others.

29.     To generate leads, Defendant Better and their agents, employees and/or vendors, and other unknown marketing firms and call centers, uses random, robocall and automated dialing system generated telemarketing calls and computer aided and generated blast texts, systems of which are capable of storing and deploying randomly generated and sequentially numbered calls to reach the maximum number of consumers who have never had a relationship with any of the Defendants, and who never consented to receive their calls.

6

30.     Defendant Better also utilizes computer systems to block or otherwise circumvent the called number's caller identification functions.[1]  By circumventing and blocking caller identification functions on the called number increases the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendant Better and its employees, vendors and/or agents.

31.     Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39) and a qualified Missouri subscriber who has lodged his objections to the Missouri Attorney General over receiving any telemarketer calls, whatsoever.

32.     Plaintiff is the sole residential subscriber, who personally registered his residential cellular telephone number (the "Number"), 314-698-XXXX, on the National and Missouri State Do Not Call Registries in 2022 to cease all telemarketing calls to his phone, where it has remained continuously since and lodged his objection to receiving these calls with the Missouri Attorney General contemporaneously with the registration.

33.     Despite this, Defendant Better and their agents, employees and/or vendors, as approved, encouraged, enticed and ratified by Defendant Better's policies, practices and procedures, placed more than three (3) telemarketing calls and automated texts to Plaintiff beginning in September of 2024.[2]

---

[1] Telemarketers cause a local areas code and number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." See http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

[2] The material fact that the Defendant disables the caller I.D. function when deploying its illegal telemarketing calls whereon, they commit a tort upon each resident on the no call list who answers the phone, provides express jurisdiction over each illegal call within this Court.

34.    During this series of calls/texts, the telemarketers stated they were agents for Defendant Better and solicited Plaintiff to purchase mortgage related services and all calls received by the Plaintiff had the caller identification functioned blocked or otherwise circumvented so the Plaintiff could not identify the caller and was deceived into believing that there was a problem with family or friends and answered the unsolicited telemarketing calls.

35.    Just prior to being connected to the telemarketer, Plaintiff heard a click, a pause, some dead air space, some various robotic and artificial sounds and squealing noises and the call was then transferred and connected, and though Plaintiff indicated that they were interrupting his family time and was extremely busy and could not take the call, Defendant Better and their agents, employees and/or vendors, made another series of telemarketing calls to the Plaintiff.

36.    Each of the illegal telemarketing calls were condoned, encouraged, enticed, and ratified by Defendant Better and their agents, employees and/or vendors, as detailed supra:

| | | | | |
|---|---|---|---|---|
| a. | 8/07/24 | 5:20 am | (646) 762-0678 | text[3] |
| b. | 8/07/24 | 8:01 am | (646) 760-4655 | call |
| c. | 8/08/24 | 2:04 pm | (646) 762-0678 | text[4] |

37.    The Defendants persistently harassed, annoyed, frustrated, and abusively solicited Mr. Prosser to purchase services through Better and their agents, employees and/or vendors, even though he is registered on the Federal and Missouri Do Not Call registry and has been for years prior to their unsolicited marketing calls/texts to his private, personal residential cell phone and the Plaintiff had no prior business relationship with the Defendant.

---

[3] Considering this text was sent to Plaintiff's phone at 5:20 am, Defendant Better is in further violation of 407.1076(5) RSMo., which clearly states it is an unlawful telemarketing practice to "Engage in telemarketing to a consumer's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called consumer's location;" Mo. Ann. Stat. § 407.1076 (West).

[4] The Missouri Attorney General advises not to answer a telemarketing text as it will alert the telemarketer that they have a good phone number to repeatedly call.

38.     Plaintiffs' privacy and right to seclusion have been grossly, deliberately, and repeatedly violated by the above-described telemarketing calls/texts and the Plaintiff was severely annoyed, harassed, frustrated and humiliated by a myriad telemarketing calls made to his private residential phone.

39.     The Plaintiff never provided his prior express written consent to receive nor requested these calls from the Defendant and has no prior business relationship with the Defendant.

40.     Defendants' aggravating, frustrating, abusive and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, caused him to incur provider fees, the depletion of his battery life, wear and tear on his phone equipment and by intruding upon Plaintiff's right to privacy and seclusion.

41.     Plaintiff and all members of the Class have been harmed by the acts of Defendants because their privacy and right to seclusion have been violated, they were annoyed, harassed, frustrated, and caused severe physical injuries, including chest pain, anxiety, and incurring telephone service provider fees, wear and tear on phones, damage and disruption to the phone's battery life, and other injuries and costs.

42.     Defendant's phone calls harmed Plaintiff and class members by wasting their time and forcing them to unwillingly listen to and read their unlawful sales pitch and violated their rights to privacy, solace and seclusion.

43.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls or texts, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227 (b)(1)(A).

9

44.     Defendants made and continue to make these telemarketing calls and send these blast computer generated texts to individuals nationwide without prior written express consent.

45.     During all the calls after the initial call was answered it was obvious that they were made by automatic yet random equipment by the Defendant as each prefaced by automated clicks, computer squeals, pauses, and dead air space before the telemarketer began speaking and the texts contained hyperlinks and opting instructions. This artificial intelligence and automated computer use of randomly generated phone numbers are akin to the illegal calls made using ATDS and predictive dialers:

> Predictive dialers initiate phone calls while telemarketers are talking to
> other consumers . . . In attempting to "predict" the average time it takes
> for a consumer to answer the phone and when a telemarketer will be free
> to take the next call, predictive dialers may either "hang-up" on consumers
> or keep the consumer on hold until connecting the call to a sales representative, resulting
> in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

46.     Defendant Better and their agents, employees and/or vendors placed numerous calls alleged in this complaint with one or more ATDS and predictive dialers.

47.     Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, randomly and sequentially generating and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the calls alleged below. Rather, the predictive

dialer(s) electronically and sequentially generated and dialed Plaintiff and Class members' cellular telephones in an automated fashion. The Defendants dialers constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(c)(5); and 47 U.S.C. § 227(b)(1)(A) et seq.

48.    None of the telephone calls alleged in this complaint constituted calls for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i) and they occupied their telephone lines, rendering them unavailable for legitimate communication and personal family affairs and caused the Plaintiff to incur provider fees, suffer the wear and tear on his phone equipment, and the degradation of his battery life, invaded his rights to privacy and seclusion, and the calls were harassing, frustrating, annoying and abusive.

## CLASS ALLEGATIONS

49.    Class Definition: Plaintiff seeks to certify a class and brings this Complaint against the Defendant, as authorized by Missouri Supreme Court Rule 52.08 and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of himself and the following Classes:

### Missouri Do Not Call Class ("MDNC Class")

All persons in the **Missouri Do Not Call Class ("MDNC Class")**: All persons in the State of Missouri who (1) had his or her telephone number(s) registered with the Missouri Do-Not-Call registry for at least thirty days; (2) but who received more than one telephone call or text made by or on behalf of Defendant; (3) within a 12-month period; and (4) from four years prior to the filing of this Complaint.

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

**Robocall Class and Automatic Telephone Dialing System Class:** All persons in the United States who (1) telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but received more than one telemarketing call from or on behalf of Defendant on their cellular phone service; (3) within a twelve month period; (4) through the use of an automatic telephone dialing system or artificial or pre-recorded voice system; (5) within four years prior to the filing of this Complaint.

50.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the Classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery. Plaintiff is a member of each Class.

51.    The Class as defined above are identifiable through phone records and phone number databases, the Defendants records of consent and prior identifiable business relationships with potential putative class members and number at least in the thousands and individual joinder of these persons is impracticable. Plaintiff is a member of the Class.

52.    Class Numerosity: The exact number of members of each Class is unknown and is not available to Plaintiff currently, but such information is readily ascertainable by Defendant and their agents. The Classes are so numerous that joining all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

53.    Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

a.    Whether Defendant's used an "automatic telephone dialing system" or as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b.    Whether Defendant had written prior express consent to call Class members prior to making telemarketing calls;

c.    Whether Defendants systematically made telephone calls to members of the DNC and MDNC Classes whose telephone numbers were registered with the Missouri and national Do-Not-Call registries;

d.    Whether Defendant systematically made telephone calls to members of the DNC and MDNC Classes where Defendants did not have a current record of consent to make such telephone calls;

e.    Whether Plaintiff and Class Members are entitled to damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

f.    Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

54.    The Plaintiffs' claims are typical of the claims of members of the Class and Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he and other class members have access to attorneys experienced in class actions, including TCPA class actions.

55.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

13

adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents, vendors, and sub-contractors.

56.    Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendant's misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

57.    Injunctive Relief is Appropriate: Based on information and belief, Defendant Better and their agents, employees and/or vendors continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

58.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## COUNT I
### Violations of the MDNC Against All Defendants
### by Plaintiff Individually and on Behalf of the MDNC Class

59.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 58 as though set forth herein.

60.     Plaintiff brings this claim individually and on behalf of the Missouri No Call and Anti Telemarketing Class Members ("MDNC") against Defendants.

61.     The Defendants' acts and omissions of making more than three (3) illegal calls/texts to Plaintiffs private residential cellular phone, one of which occurred at 5:20 am, constitute multiple violations of the MDNC in that No person or entity shall make or cause any telephone to ring and make any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section § 407.1073, § 407.1076, §407.1098.1 of the subscriber's objection to receiving telephone calls.

62.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members prior to making these and other unsolicited telemarketing calls.

63.     In violation of the MDNC, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent or invitation and after notice to the Missouri Attorney General was given that they did not want to receive said calls.

64.     Defendants made and/or knowingly allowed the telephonic calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers, used a robotic interface with the Plaintiff, disabled the Caller I.D. function so Plaintiff could not identify the caller prior to answering the call/text to deceive Plaintiff to answer the unsolicited calls.

15

65.     The Defendants' violations were negligent, willful, or knowing and calculated to violate the Plaintiffs rights to privacy, and seclusion, as well as to harass, annoy, and frustrate the Plaintiffs, and Defendant's aggravating and abusive illegal phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, caused him to incur provider fees, the depletion of his battery life, wear and tear on his phone equipment and by intruding upon Plaintiff's right to privacy and seclusion.

66.     As a result of Defendant's conduct, and pursuant to §407.1076(3)(5)(11), §407.1098.1 § 407.1073 of the MDNC, Plaintiff and Class members were harmed and are each entitled to a maximum of $5,000.00 in damages for each violation and Plaintiff and the Class members are also entitled to an injunction against future calls.

***WHEREFORE,*** Plaintiff Prosser and all members of the MDNC class prays for judgment against Defendant BETTER for $5,000.00 per violation totaling fifteen thousand dollars ($15,000.00) for calls to Plaintiff Prosser, and additional damages per call/text to each class member, for their attorney's fees and costs, appropriate injunctive relief, and for such further relief deemed just and equitable in the premises.

## Count II
## Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227)
## (On behalf of Plaintiff and the Robocall and ATDS)

67.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

68.     The foregoing acts and omissions of Defendant Better and its affiliates, agents, and/or other persons or entities acting on Defendant's behalf using an automated dialing system and computer aided automated blast texts constitute numerous and multiple violations of the

16

TCPA by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

69.     The Defendant's violations were negligent, willful, or knowing and harmed Plaintiff's and violated their rights to privacy and seclusion.

70.     As a result of the knowing and willful illegal acts of the Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each call/text made.

71.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Prosser individually and on behalf of all others similarly situated, seeks judgment against Defendant Better as follows:

(a)     For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an award of statutory damages for Plaintiff Prosser in the amount four thousand five hundred ($4,500.00) dollars and additional damages for each member of the Classes;

(c)     For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d)     For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

17

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     Such further and other relief as the Court deems necessary.

**COUNT III**
**Violations of the TCPA Against All Defendants**
**by Plaintiff Individually and on Behalf of the DNC Class**

72.     Plaintiff hereby incorporates by reference as though set forth fully herein paragraphs 1 through 71. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class

73.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call/text within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

74.     The foregoing acts and omissions of Defendant Better and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf by illegally calling/texting the Plaintiff's residential cell phone more than three (3) times within a twelve (12) month period constitute numerous and deliberate violations of the TCPA, 47 U.S.C. § 227 et seq., by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

75.     Defendant Better's violations were negligent, willful, and knowing and harmed the Plaintiffs by violating their rights to privacy and seclusion.

18

76.     As a result of Defendant Better's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each call made.

77.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant Better from making calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Prosser individually and on behalf of all others similarly situated, seeks judgment against Defendant Better as follows:

(a)     For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an award of statutory damages for Plaintiff Prosser in the amount four thousand five hundred ($4,500.00) dollars and additional damages for each call made to members of the Classes;

(c)     For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d)     For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     Such further and other relief as the Court deems necessary.

### COUNT IV
#### Defendants' Vicarious Liability

19

78.    Plaintiff reasserts and incorporates fully herein by reference paragraphs 1 through 77 as though fully set forth herein.

79.    For 28 years now, the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

80.    In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

81.    The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

82.    The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

83.     A direct connection exists between all Defendants herein and the calls complained of by Plaintiff because the calls were directly made on behalf of Defendant Better (their employees, agents or telemarketers) so they could all profit from a common enterprise in which they all substantially participated.

84.     "As the FTC has explained in its Compliance Guide, `taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (10th Cir. 2013).

85.     Defendant Better is vicariously liable for the calls complained of by Plaintiff herein because they:

a)     authorized or caused telemarketers to initiate the phone calls or initiated the calls and texts themselves.

b)     directly or indirectly controlled the persons who actually made or initiated the calls;

c)     allowed the employees, telemarketers and independent agents access to information and operating systems within Defendant's control for the purpose of selling goods and services, without which they would not be able to sell their services using robocalling and direct dialing;

d)     allowed the telemarketers and independent agents to enter or provide consumer information into Defendant's sales or operational systems;

e)     approved, wrote, reviewed, or participated in developing the telemarketing sales scripts and automated text messages;

f)     Defendant reasonably should have known or consciously avoided knowing that

21

the actual telemarketers were violating the law and Defendant failed to take
effective steps within their power to require compliance; or

g)    Defendant Better gave substantial assistance or support to the telemarketers and
each other while knowing, consciously avoiding knowing, or being recklessly
indifferent to the fact the telemarketers were engaged in acts or practices that
violated the TCPA and MDNC

86.    Defendant Better and their telemarketers apparently had authority to engage in the
direct dialing, autodialing, texting and robocalling at issue herein because after Plaintiff patiently
listened and read to the scripted sales pitch the Defendants would have all profited from each
sale.

87.    Defendant Better ratified the illegal robocalls, ATDS, computer generated blast
texting and direct dialing DNC and MDNC violations to Plaintiff described above because they
accepted and intended the benefits to them of the calls while knowing or consciously avoiding
knowing their telemarketer-agents were robocalling and automated texting cell phones and phone
numbers listed on the Federal and Missouri State Registry without complying with the Registry
and without prior express written consent of the robocalled, called, and texted consumers.

88.    Defendant Better's actions or inactions were deliberate, knowing and willing.

89.    As a direct and proximate result of the three (3) illegal calls by the above
Defendants, Plaintiff suffered the gross violation of his rights to privacy, solace and seclusion as
set forth above, and were frustrated, harassed, annoyed, as well as suffered monetary loss in
phone provider service fees, wear and tear on his phone equipment, and the degradation of his
battery life.

**WHEREFORE**, Plaintiff prays for entry of judgment against Defendant Better for their vicarious liability for an additional $19,500.00 and for his statutory, actual and/or other treble damages sufficient in size to set a stern example and deter in the future like conduct complained of by Defendants or others, and for additional damages for each call made to class members. Plaintiff prays for such other and further relief as the court finds proper. Plaintiff requests an award of his attorney fees and costs.

Respectfully submitted,

Christopher Prosser
4217 Maple Tree Ct.
Imperial, MO 63052
Attorneysacquisitions@outlook.com
(314) 698-xxxx

### NOTARY PUBLIC

A person personally known to me to be Christopher Prosser, personally appeared before me on the date stated hereafter and after being duly sworn upon his oath, deposed and stated under the penalties of under perjury that the facts set forth in the above and foregoing Class Action Complaint are true and correct to the best of his knowledge and belief.

Christopher Prosser                                                           Date 10/8/2024

Notary Public

MY COMMISSION EXPIRES: March 7, 2028

CIERRA LEWIS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
COUNTY OF WASHINGTON
COMMISSION #24567699
My Commission Expires: Mar. 7, 2028